(Reap. Dec. 10563)

C. J. TOWER & SONS OF BUFFALO, INC. *v.* UNITED STATES

Entry Nos. 12693, 12415.

(Decided July 11, 1963)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff. *John W. Douglas,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the defendant.

OLIVER, Chief Judge: This appeal for reappraisement relates to certain electrical connectors for aircraft, which are devices, comparable to elaborate wall sockets, used to transfer electrical energy in aircraft. The merchandise was exported by Cannon Electric Canada,

Ltd., of Toronto, and entered at the port of Buffalo. Two items are involved. They are identified herein as follows:

| Item No | CA 3100KE–10SL–4P | CA 3106KE–12S–3P |
|---|---|---|
| Entry No | 12693 | 12415 |
| Order Date | Sept. 26, 1960 | Nov. 15, 1960 |
| Date of Exportation | Jan. 6, 1961 | Dec. 30, 1960 |
| Appraised Value (Canadian currency, per piece). | $34.63 (less 33⅓%) | $40.49 (less 33⅓%) |
| Plaintiff's Claimed Value (U.S. currency, per piece). | $20.78 | $20.25 |

There is no question that these electrical connectors are not merchandise enumerated in the final list, T.D. 54521, issued by the Secretary of the Treasury, pursuant to the Customs Simplification Act of 1956, T.D. 54165. Since the items in question were entered subsequent to February 27, 1958, they are to be appraised under the said act.

It is not disputed that export value, adopted by the appraiser, is the proper basis for appraisement of the present merchandise. Such value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, as follows:

SEC. 402.  VALUE.

\*   \*   \*   \*   \*   \*   \*

(b) Export Value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

By virtue of a stipulation entered into between counsel for the respective parties, at the time of trial, the controversy herein is limited to the statutory element, "usual wholesale quantities," of the foregoing statutory definition. Counsel's agreement appears in the record as follows (R. 4):

The merchandise was entered and appraised at export value, under Section 402(b), as amended by the Customs Simplification Act of 1956;

There is an export value for "such" merchandise;

All elements of export value are present;

The only issue before this Court is the usual wholesale quantities in which such merchandise was sold for exportation to the United States, and the price thereof; and also the terms of sale, meaning whether it was U.S., or Canadian currency; and whether duty was or was not included.

In plaintiff's reply brief, counsel conceded "for the purposes of this case only that duties should not be deducted from the f.o.b. Toronto prices."

Plaintiff's evidence consists of the oral testimony of the secretary-controller of the Canadian exporter, who is also the manufacturer of the present merchandise. The witness identified his company's price-list, effective April 20, 1960 (plaintiff's collective exhibit 1), and list of sales, for the period from January 1, 1960, to August 31, 1961 (plaintiff's collective exhibit 2), relating to the items in question and covering the time of exportation thereof. An examination of the pricelist discloses that the manufacturer's prices varied according to quantities and that its prices were fixed for quantities from 1 to 9, from 10 to 49, from 50 to 99, from 100 to 249, from 250 to 499, and from 500 to 999. In his explanation of the said list of sales, so far as it relates to the two items in question, the witness identified sales as follows:

| Item No. | Date of Sale | Order Numbers | Quantity Sold | Selling Price |
|---|---|---|---|---|
| CA 3100KE–10SL–4P | 5/26/60 | 3012 | 12 | $20.78 per pc. |
| | 9/26/60 | 5288 and 5289 | 35 | 20.78 per pc. |
| CA 3106KE–12S–3P | 6/29/60 | 3690 | 192 | 20.25 per pc. |
| | 6/30/60 | 3717 and 3718 | 212 | 20.25 per pc. |
| | 11/15/60 | 6400–6402 | 24 | 24.29 per pc. |

In further testimony, the witness stated it is his company's policy that if more than one order for the same item is received on the same day from the same customer, those orders are treated as one sale; that each of the transactions, hereinabove set forth, is an individual sale; and that all sales are made in United States currency.

Defendant's witness was the United States appraiser of merchandise at the port where the articles under consideration were entered. He identified two reports, prepared by him for the Commissioner of Customs. One report (defendant's collective exhibit A), dated June 23, 1959, which is approximately 18 months prior to the dates of exportation of the present merchandise, contains the admission that "the wholesale quantity cannot be determined at this time," and the added statement that "the manufacturer/shipper has been requested, after a 90 day period, to furnish a recapitulation of sales in order to determine usual wholesale quantity." The second report (defendant's collective exhibit B), dated October 10, 1960, is supplementary of the earlier one, and includes a list of sales, pricelist, and computation of usual wholesale quantity of several items produced by the Canadian manufacturer herein. The computation of usual wholesale quantity (exhibit 3 of said collective exhibit B) contains no reference to item CA 3106KE–12S–3P and shows a "Usual Wholesale Quantity" of 12 for item CA 3100KE–10SL–4P. In connection with the ap-

praiser's computation of the usual wholesale quantity, the report (defendant's collective exhibit B) concludes as follows:

\* \* \* It may be noted that the manufacturer/shipper's sale price is determined upon the quantity sold and a discount applies to a particular quantity. It may also be noted from the determination of usual wholesale quantity by this office, it is quite difficult to calculate that quantity. For this reason, together with the fact that Mr. Frank L. Hancock, Secretary of Cannon Electric Canada Ltd., the manufacturer/shipper, stated that eventually their price list would contain more than three thousand (3,000) items, it is recommended that the sale price of a particular item be accepted as the value at the time of exportation. Otherwise, the determination of the specific usual wholesale quantity will be almost an impossible task.

There is nothing in either of these appraiser's reports to offer any contradiction of plaintiff's evidence. On the contrary, the supplemental report (collective exhibit B, *supra*) shows some support for plaintiff's contention.

In the light of the agreement between the parties, limiting the present issue as hereinbefore set forth, it must be accepted that all of the transactions referred to herein, and materially related to the present merchandise, meet requirements of statutory export value, section 402(b) as amended, *supra*, particularly as to the essential elements of "freely sold" and "ordinary course of trade," as such terms are defined in section 402(f) (1) and (2), respectively, of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, leaving as the sole question for determination the "usual wholesale quantities" within the statutory meaning thereof, as set forth in section 402(f) (5), as amended, *supra*, as follows:

(5) The term "usual wholesale quantities", in any case in which the merchandise in respect of which value is being determined is sold in the market under consideration at different prices for different quantities, means the quantities in which such merchandise is there sold at the price or prices for one quantity in an aggregate volume which is greater than the aggregate volume sold at the price or prices for any other quantity.

Language employed in the foregoing definition imparts to the statutory term, "usual wholesale quantities," a meaning different from that invoked when the term appeared in the provisions of export value, as such value was defined in section 402(d) of the Tariff Act of 1930, reading as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

In judicial interpretation of the phrase, "usual wholesale quantities," within the provisions of section 402(d), *supra*, our appellate court held that "the major portion, or greatest number, of sales or offers for sale in a wholesale quantity should be deemed to be the usual wholesale quantity," *Jenkins Brothers* v. *United States*, 25 CCPA 90, T.D. 49093, and *United States* v. *Minkus*, 21 CCPA 382, T.D. 46912. Thus, in the earlier statutory provisions governing export value, section 402(d), *supra*, the major portion, or greatest number, of sales was the prime consideration in determining "usual wholesale quantities."

A different standard is established under the statutory definition of the term, section 402(f)(5), as amended, *supra*, as it provides for "usual wholesale quantities" to mean the largest or the greatest quantity in which more merchandise is sold at one price, than any other quantity sold in the aggregate volume.

That Congress intended such a change in the comparable statutes, is disclosed in the House of Representatives Report No. 858 (84th Congress, 1st session), which accompanied the bill, H.R. 6040, that ultimately was enacted as the Customs Simplification Act of 1956. The pertinent part of the said report reads as follows (p. 10 thereof):

(7) The bill also provides definitions for the terms "ordinary course of trade," "purchasers at wholesale," "such or similar merchandise," and "usual wholesale quantities." The term "usual wholesale quantities" is defined in such a manner as to mean the quantities in which the merchandise is sold in the market under consideration at a price or prices for one quantity in an aggregate volume which is greater than the aggregate volume sold at the price or prices for any other quantity. Under the present law the usual wholesale quantity is the quantity in which the largest number of individual transactions occur.

Applying the formula, as heretofore set forth, for determining "usual wholesale quantities" under section 402(f)(5), as amended, *supra*, to the present merchandise, I find, on the basis of plaintiff's uncontradicted evidence, as hereinabove outlined, that the usual wholesale quantities for item CA 3100KE–10SL–4P is 20 to 49 pieces, carrying a price of $20.78 per piece (U.S. currency), and for item CA 3106KE–12S–3P is 100 to 249 pieces, with a price of $20.25 per piece (U.S. currency).

On the basis of the present record and for all of the reasons hereinabove set forth, I find as matter of fact:

1. The merchandise consists of electrical connectors for aircraft, exported by Cannon Electric Canada, Ltd., of Toronto, and entered at the port of Buffalo.

2. This merchandise is not enumerated in the final list, T.D. 54521, issued by the Secretary of the Treasury, pursuant to the Customs Simplification Act of 1956, T.D. 54165.

3. At the time of exportation of the items in question, such merchandise was freely sold, in the ordinary course of trade, in the principal market of Toronto, Canada, for exportation to the United States.

4. At the time of exportation of the articles under consideration, such merchandise was sold for exportation to the United States at different prices for different quantities.

5. At the time of exportation of the present merchandise, the quantities, at which such merchandise was sold in the principal market at a price for one quantity in an aggregate volume which was greater than the aggregate volume sold at the price or prices for any other quantity, were for item CA 3100KE–10SL–4P, 20 to 49 pieces, carrying a price of $20.78 per piece (U.S. currency), and for item CA 3106KE–12S–3P, 100 to 249 pieces, with a price of $20.25 per piece (U.S. currency).

6. At the time of exportation of the items in question, the price at which such merchandise was freely sold in the principal market of Toronto, Canada, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States, was $20.78 per piece (U.S. currency) for item CA 3100KE–10SL–4P, and $20.25 per piece (U.S. currency) for item CA 3106 KE–12S–3P.

Accordingly, I hold as matter of law:

1. The proper basis for appraisement of the items in question, as hereinabove identified, is export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165.

2. Statutory export value for item CA 3100KE–10SL–4P is $20.78 per piece (U.S. currency) and for item CA 3106KE–12S–3P is $20.25 per piece (U.S. currency).

Judgment will be rendered accordingly.