(A.R.D. 230)

ALLEN FORWARDING COMPANY *v.* UNITED STATES

Entry Nos. 20828; 31367.

## Second Division, Appellate Term

(Decided January 2, 1968)

*Morgan, Lewis & Bockius (Arthur R. Littleton* of counsel) and *Wolf, Block, Schorr & Solis-Cohen*\* for the appellant.

*Edwin L. Weisl, Jr.,* Assistant Attorney General (*Arthur H. Steinberg,* trial attorney), for the appellee.

### Before RAO, FORD, and RICHARDSON, *Judges*

RICHARDSON, Judge: The instant application for review was filed by the importer, seeking a review of the decision and judgment of the trial judge sitting in reappraisement in *Allen Forwarding Company* v. *United States,* 57 Cust. Ct. 675, R. D. 11236 and holding that export value as defined in 19 U.S.C.A., section 1401a(b) (section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) and as represented herein by the appraised values, constitutes the proper values of certain ⅜ inch armourplate glass exported from England. Appellant contends that the invoice or entered values represent the proper values of such merchandise.

It is conceded by the parties that export value as set forth in section 1401a(b) is the proper basis of value herein, and that the subject merchandise is not on the Final List promulgated by the Secretary of the Treasury in T.D. 54521.

The difference between the entered or invoice values and the appraised values are two items of deductions appearing on the involved invoices in the amounts of 5% and 7½% on one invoice and 5% and 10% on the other invoice, which figures are said by appellant to represent a competitive discount or price reduction and quantity discounts, respectively, which were allowed to all purchasers by the seller. While the figures as stated do appear on the invoices there is no indication thereon as to what they represent. And the appraisements covered by the two appeals herein which have been consolidated were made at the invoiced unit value of $1.89 per square foot, less 2 per centum (cash discount) packed, less charges shown for ocean freight and insurance.

The record consists of the testimony of Edgar P. Perilstein, vice president of H. Perilstein, the ultimate consignee herein and wholesale glass jobbers and installers, the testimony of John Baldry, United States sales manager for Pilkington Brothers (Canada) Limited, of Toronto, Canada, three documents (exhibits 1, 2 and 3) consisting of correspondence or copies of correspondence exchanged between H. Perilstein and Pilkington Brothers (Canada) Limited, and the official papers.

---

\*Substituted as counsel on December 7, 1967.

By way of brief reference to the evidence, it appears that the imported merchandise, owing to its character of hardness resulting from tempering, is used in the manufacture of acrylic sheets as the mould in which the plastic sheet is formed. H. Perilstein, in its quest for new sources of supply of such glass for its customers, made overtures in 1962 to Pilkington Brothers Limited, of St. Helens, England, to see if its needs could be supplied by that British firm. In reply to Perilstein's inquiry quotations were received from the Canadian subsidiary company in the form of a letter, dated January 15, 1963, offering, among other things, ⅜ inch toughened plate in sizes over 25 feet super for 189 cents per square foot. The letter (exhibit 1) also stated:

The above mentioned prices apply for orders of less than 10,000 square feet. For orders in excess of 10,000 sq. ft. the following rebates apply to sizes in excess of 15 ft. super only.

10,000 ft. up to 25,000 ft. 5% rebate
25,000 ft. up to 50,000 ft. 7½% rebate
In excess of 50,000 ft. 10% rebate

Please note the sizes below 15 ft. super are not subject to any quantity rebate but these sizes may count towards the total footage of the order in assessing the rebate applicable.

Following the receipt of some trial shipments of the ⅜ inch glass which worked out satisfactorily, Perilstein entered upon a course of dealings with Pilkington Brothers in the importation of ⅜ inch "Armourplate" on the terms laid down in exhibit 1. Late in 1963 Perilstein was notified by Pilkington of a 5% reduction in price to meet competition. This reduction was over and above the quantity discounts. It further appears that the quantity discounts remained constant during the period here involved, but that Pilkington at the solicitation of Perilstein reached an agreement with Perilstein to have the latter's quantity discounts applied on all orders at the maximum rate of 10% in view of Perilstein's expectation to make annual purchases of well over 50,000 square feet of "Armourplate" glass. And it appears that Perilstein's actual purchases exceeded the 50,000 square feet level.

Edgar Perilstein had no idea of what terms of sale were offered to others in the market for this glass besides his company. John Baldry, who had been with the parent company in England prior to coming to Canada, corroborated Edgar Perilstein's testimony with respect to competitive and quantity discounts. And Mr. Baldry stated that the prices which were quoted to Perilstein were quoted to "all interested people", pointing out that the total United States market consisted of only two purchasers, namely, Perilstein and Semon Bache of New York, although one other unnamed New York firm had exhibited some incipient interest in the merchandise.

Edgar Perilstein, in an apparent effort to protect what he regarded as a trade secret, declined to state quantity figures on "Armourplate" importations from Pilkington. But Baldry stated that Perilstein purchases quantity-wise were on a ratio of 8 to 1 over the purchases of Semon Bache. No other evidence relating to quantities in which "Armourplate" glass in ⅜ inch thickness was purchased from Pilkington and imported into the States appears in the record.

Appellant contended before the trial court that the evidence satisfied every requirement of statutory export value, and supported the claimed deductions of 5% and 10% for a price reduction and a quantity discount, respectively, from the invoice and entered values of the merchandise at bar. The trial court disagreed and held that the evidence did not establish an export value for the involved merchandise other than that returned by the appraiser. On the matter of the statutory element of "usual wholesale quantities", the court below stated in part:

The older statute was construed to provide for a major portion of sales. The record in the case at bar does not establish any particular quantity in which the imported ⅜ inch or any other size of "Armourplate Glass" was sold during the involved period at the price or prices in aggregate volume which is greater than the aggregate volume sold at the price or prices for any other quantity. Thus the evidence of the exporter herein fails to comply with the provisions of the new statute 402(f)(5), *supra*. Pilkington, from the inception of its business dealings in ⅜ inch Armourplate glass in January 1963, sold varying quantities of Armourplate acrylic glass at varying discounts measured by the square footage, applied on a yearly basis. Plaintiff produced no competent evidence of actual orders showing price and discounts. There is an obvious failure to meet the requirements of the statute presently under consideration by the court.

\*       \*       \*       \*       \*       \*       \*

The court is, therefore, clearly of the opinion that the plaintiff has failed to establish by satisfactory proof the usual wholesale quantities in which such merchandise was sold at the respective dates of exportation.

We single out this particular phase of the case below because, although appellant undertook before the trial judge to establish an export value *de novo* and not merely to challenge an item or items of the appraisement, appellant has not in the instant application challenged this specific finding of the court below by appropriate assignment of error. In fact, before us appellant has with commendable candor acknowledged the correctness of the ruling below on the matter of "usual wholesale quantities." What appellant asks of us is that we remand the case to the court below so that appellant may undertake to buttress its case with additional proof on the subject of "usual wholesale quantities."

On the state of the instant record appellant cannot succeed in its application for review. We may not entertain a request for affirmative relief premised on an issue or question not embraced in an assignment of errors. *United States* v. *Fisher Scientific Company*, 40 CCPA 164, 171, C.A.D. 513. Neither does an acknowledged deficiency in evidence furnish a proper occasion to the court for a remand of proceedings for the purpose of supplying evidence of matter in which the record is deficient. See and compare *Hill Brown Corp.* v. *United States*, 54 CCPA 99, C.A.D. 917, decided May 11, 1967. And inasmuch as appellant's case lacks proof of one of the essential elements of export value, such deficiency aborts consideration by us of any other essential element of export value respecting which appellant has an equal burden of proof. *Brooks Paper Company* v. *United States*, 40 CCPA 38, 41, C.A.D. 495. It follows, therefore, that the findings and judgment below must be affirmed.

Judgment will be entered accordingly.