(A.R.D. 238)

BMC TRADING CORP. ET AL. *v.* UNITED STATES

Entry No. 259, etc.

## Second Division, Appellate Term

(Decided May 13, 1968)

*Walter E. Doherty* for the appellants.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Steven R. Sosnov*, trial attorney), for the appellee.

Before RICHARDSON and LANDIS, Judges, and OLIVER, Senior Judge

LANDIS, Judge: The several errors raised in this application for review flow from one material allegation that the trial judge erred "in finding that on or about the dates of exportation, such or similar merchandise was not freely sold or freely offered for sale in Japan, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at $2.60 per dozen pieces, net packed." *BMC Trading Corp. et al.* v. *United States*, 57 Cust. Ct. 662, R.D. 11232.

The finding was made on evidence adduced in a consolidated trial of 34 appeals for reappraisement of men's expansion watch bands, exported from Japan during the period April 1962 through November 1963.

Export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (T.D. 54165), is, concededly, the proper basis for appraisement. The watch bands were appraised on export value basis at $2.75 per dozen, net packed. Appellants (plaintiffs below) claim that they should have been appraised at the entered value, export basis, $2.60 per dozen, net packed. We review here the substance of the finding below as to the claimed $2.60 export price.

Section 402(b), as amended, defines export value as follows:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold, or in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

The only evidence of record is the official papers and an affidavit of Mr. Tsunagu Yamamoto, president of FTM Jewelry Corp., exporter of the watch bands. The facts are not in dispute. As stated by the trial judge in his opinion, from which we quote, the facts are:

* * * He [Mr. Yamamoto] says his company sold the involved watch bands to the importer, BMC Trading Corp., at $2.60 per dozen, f.o.b. Yokohama, including packing, inland freight, storage, insurance, hauling and lighterage, and all other petty charges.

Sales to importer were on irrevocable letters of credit, payable immediately on shipment. Sales to other United States customers were on extended 90-day sight drafts, which "of course made a difference." The watch bands were offered to them at $2.75 per dozen with the same charges included. Sales to importer, according to a schedule attached to the affidavit, totaled 65,800 dozens, entered from October 24, 1961, to November 1, 1963. Sales to others, according to another schedule totaled 23,650 dozens. This apparently "made a difference" also. Those sold to others than importer were manufactured by a different company, but whether they differed in any other respect is not stated. [57 Cust. Ct., page 662.]

The trial judge found that, on the above facts, the watch bands were not "freely sold" at the $2.60 price. Why he so found is best explained by what he said, as follows:

This case resembles *F. B. Vandegrift & Co., Inc.* v. *United States*, 56 Cust. Ct. 715, R.D. 11169 (application for review pending), in that a more favored and more desirable purchaser buys in a larger aggregate volume. The appraised value of $2.75 may or may not have been based on the FTM Jewelry Corp. price to the less favored purchasers.

Cf. *Aceto Chemical Co., Inc.* v. *United States*, 51 CCPA 121, C.A.D. 846. The appraiser presumably found that the merchandise was not "freely sold" at the $2.60 price; it may have been a negotiated price and plaintiffs have not offered proof that it was available to all others on the basis importer enjoyed. The appraiser presumably found such or similar merchandise was freely sold or offered by someone at the $2.75 price. The importer could not have qualified under the statute as a "selected purchaser at wholesale." See discussion and authority cited in *F. B. Vandegrift & Co., Inc.* v. *United States, supra.* Accordingly, the appraisal at $2.75 is not demonstrated to be erroneous and must stand. [57 Cust. Ct., pp. 662, 663.]

We agree with the trial judge in his analysis of the facts and applicable law. Appellants, however, skirt any direct comment on what the trial judge said and, in effect, contend that, the trial judge to the contrary, section 402(f)(5) of the Tariff Act of 1930, as amended, controls the above facts where the watch bands were sold, in the usual wholesale quantities, at two different prices. Appellants, in our opinion, are wrong.

Section 402(f)(5) of the Tariff Act of 1930, as amended, provides as follows:

(f) DEFINITIONS.—For the purposes of this section—

\*      \*      \*      \*      \*      \*      \*

(5) The term "usual wholesale quantities", in any case in which the merchandise in respect of which value is being determined is sold in the market under consideration at different prices for different quantities, means the quantities in which such merchandise is there sold at the price or prices for one quantity in an aggregate volume which is greater than the aggregate volume sold at the price or prices for any other quantity.

As appellants read section 402(f)(5), the price at which the watch bands were freely sold, in the usual wholesale quantities, is $2.60, because a larger aggregate volume, 65,800 dozens, were sold at that price, in the relevant export period, than at the $2.75 price, only 23,650 dozens. But section 402(f)(5) is not concerned with the aggregate volume sold, which is what appellants emphasize, except in the factual situation where merchandise "is sold in the market under consideration at *different prices for different quantities.*" [Emphasis added.] These watch bands were not sold at different prices for different quantities. They were sold at different prices for the same or usual wholesale quantity of a dozen. There is no issue here, as we read the record, of "usual wholesale quantities," which is the question section 402(f)(5) is designed to answer by its formula of "the price or prices for one quantity in an aggregate volume which is greater than the aggregate volume sold at the price or prices for any other quantity." Cf. *Inter-Maritime Fwdg. Co., Inc.* v. *United States*, 51 Cust. Ct. 529,

A.R.D. 162; *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 51 Cust. Ct. 329, Reap. Dec. 10563.

Since appellants' contention lacks any additional thrust that we need consider, we incorporate herein the facts found by the trial judge and his conclusions of law. The judgment below is affirmed.

Judgment will enter accordingly.